UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MARK ST. JOHN                           :
                                        :           PRISONER
        v.                              :   Case No. 3:05CV120(WWE) (HBF)
                                        :
THOMAS ARNISTA[1]                       :

RULING ON PENDING MOTIONS

The plaintiff, Mark St. John, currently incarcerated at MacDougall Correctional Institution in Suffield, Connecticut, filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He alleges inter alia that during 2003 and 2004, Dr. Thomas Arnista was deliberately indifferent to a condition which impaired his eyesight. Pending is plaintiff's motion for leave to amend and defendant's motion for summary judgment. For the reasons that follow, the motion to amend is denied and the motion for summary judgment is granted.

On July 14, 2006, the court granted the plaintiff leave to file an amended complaint on or before July 31, 2006. The plaintiff never filed an amended complaint nor moved for an extension of time to do so. On December 28, 2006, the defendant filed a motion for summary judgment. On September 17, 2007, almost nine months after the defendant moved for summary judgment, the plaintiff filed a response to the motion for

---

[1] Defendant Dr. Thomas Arnista was incorrectly identified in the case caption as Thomas Arniste.

summary judgment and a motion for leave to file an amended complaint to add three new defendants and allegations concerning requests made to the Utilization Review Committee ("URC") for treatment of his vision problems.

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 15(a), Fed. R. Civ. P. Because the defendant filed an answer to the complaint on January 20, 2006, the plaintiff must seek leave to file an amended or supplemental complaint.

Underlying Rule 15(a) is an assumption that the amended or supplemental complaint will clarify or amplify the original cause of action rather than incorporate additional causes of action. See Klos v. Haskell, 835 F. Supp. 710, 715 n.3 (W.D.N.Y. 1993), aff'd, 48 F.3d 81 (2d Cir. 1995). In determining whether to grant leave to amend, the court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice and futility of the amendment. See Forman v. Davis, 371 U.S. 178, 182 (1962). See Barrows v. Forest Laboratories, Inc., 742 F.2d 54, 58 (2d Cir. 1984) (undue delay, bad faith and prejudice to opposing party are "touchstones" of court's discretion to deny leave to amend).

Plaintiff claims that an "investigation" has revealed the names of three more individual responsible for violating his civil rights. He seeks to add the three members of the URC who allegedly denied his requests for treatment of the glaucoma affecting his vision. The allegations against these individuals run from July 2004 through March 2006. The plaintiff provides no explanation as to why he failed to comply with the court's order to file an amended complaint more than a year ago. It is evident from other motions and from plaintiff's response to the motion for summary judgment that plaintiff has received legal assistance from an attorney at the Inmates' Legal Assistance Program since at least April 2006, including an exhausting review of his medical file and could have discovered the names of the three URC members at an earlier date. (See Mot. Ext. Time, Doc. # 15; Ex. C to Mem. Opp'n Mot. Summ. J., Doc. # 35-1.)

The allegations relating to the time period prior to September 17, 2004 are barred by the three year statute of limitations. See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994) (applying Connecticut's three year statute of limitations to actions brought pursuant to 42 U.S.C. § 1983). Any attempt to add those claims to this action would be futile.

See Acito v. Imcera Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995) (although the Federal Rules of Civil Procedure provide that leave to amend should be "freely given," Fed. R. Civ. P. 15(a), denial of a motion for leave to amend is appropriate where the proposed amendment would be futile).

With respect to the request to add claims relating the period after September 17, 2004, the court concludes that the addition of those claims would unnecessarily delay the litigation of this action and also prejudice the defendant. See Forman, 371 U.S. at 182. The defendant has moved for summary judgment in this action. Justice does not require that the plaintiff be permitted to file an amended complaint to add three new defendants and new claims at this stage of the litigation. The motion for leave to amend is denied.

I. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation

marks and citations omitted).

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.'" <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted). Thus, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury

could reasonably find for the [plaintiffs].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

6

II. Facts[2]

The plaintiff has been incarcerated within the State of Connecticut Department of Correction ("DOC") at various times since 1987. In 2003 and 2004, he was incarcerated at Garner Correctional Institution in Newtown, Connecticut. The defendant Dr. Arnista, is a licensed Optometrist, who has practiced in the State of Connecticut for over twenty years. From 1991 until July 2004, Dr. Arnista treated inmates incarcerated in various facilities within the DOC as an independent contractor. From July 2004 to May 2005, Dr. Arnista treated Connecticut inmates as an employee of the Department of Correction and spent approximately twenty hours per month at Garner Correctional Institution.

The URC, which consists of a panel of physicians, must approve all non-emergency consultations, including ophthalmology consultations. Dr. Arnista has never been a member of the URC. Once a health care professional receives notice of the approval of a request for a consultation from the URC, the health care professional arranges for the consultation within any parameters set forth by the URC. The healthcare professional may or may not

---

[2] The facts are taken from defendants' Local Rule 56(a)1 Statement [Doc. #24-3] and the Exhibits attached to defendants' Memorandum in Support of Motion for Summary Judgment [Doc. # 24-2], the plaintiff's Local Rule 56(a)2 Statement [Doc. #35-2] and the Exhibits in support of plaintiff's Local Rule 56(a)2 Statement [Doc. # 35-1].

7

be consulted regarding the date of the consultation.

Glaucoma refers to a number of similar diseases that affect the eyes and is typically marked by an increase of interocular pressure which damages the optic nerve. Glaucoma usually takes months to years to develop and progress. The two main types of glaucoma are primary open angle glaucoma and angle closure glaucoma.

Dr. Arnista first examined the plaintiff on July 16, 2004, based on a written request from May 2004. Dr. Arnista tested the interocular pressure in both of plaintiff's eyes and found that the pressure in his right eye was twenty-seven and the pressure in his left eye was nineteen. He noted that the elevated pressure in plaintiff's right eye indicated optic nerve damage and strongly suspected that plaintiff suffered from open angle glaucoma in that eye. Dr. Arnista thought it would be beneficial to obtain multiple interocular pressure readings before devising an appropriate course of treatment. On July 21, 2004, Dr. Arnista examined the plaintiff and noted the interocular pressure in plaintiff's right eye was thirty and the pressure in the left eye was twenty-two. An interocular pressure of thirty is indicative of immediate treatment regardless of other factors. Dr. Arnista started the plaintiff on a prescription eye drop called Travatan in an effort to reduce the pressure in plaintiff's right eye and requested that the plaintiff return to

8

see him for a follow-up visit in three weeks.

That same day, Dr. Arnista also submitted a request to the URC for a consultation with an ophthalmologist so that baseline tests such as visual field testing and digital imaging of the optic nerve could be performed. Those tests could not be performed at any of the correctional institutions.

On July 27, 2004, the URC rejected this request and recommended that Dr. Arnista continue to monitor and attempt to reduce the interocular pressure in plaintiff's eyes and directed Dr. Arnista to re-submit his request if he determined a consultation was needed for visual field testing.

On August 13, 2004, Dr. Arnista examined the plaintiff and noted that the interocular pressure in his right eye was twenty and the pressure in his left eye was fifteen. Dr. Arnista opined that the plaintiff's pressure was responding positively and recommended that he continue on the eye drop medication and return to see him in three to four weeks.

Dr. Arnista next examined the plaintiff on September 15, 2004 and noted that the interocular pressure in both eyes was seventeen. He opined that the pressure in plaintiff's right had decreased but that he would submit a request to the URC for baseline visual field testing, a gonioscopy[3] and Glaucoma

---

[3] Examination of the angle of the anterior chamber of the eye. Stedman's Medical Dictionary p. 739.

Diagnosis testing. On October 6, 2004, Dr. Arnista submitted a request to the URC for visual field testing, fundus photographs of the optic nerves and Glaucoma Diagnosis testing to further assess the plaintiff's glaucoma condition.

On November 9, 2004, in response to Dr. Arnista's request to the URC, the plaintiff was examined by an ophthalmologist at the University of Connecticut Health Center. The interocular pressure in his left eye had increased to thirty-eight and the pressure in his right eye was twenty-two. Visual Field Testing performed that day revealed severe visual loss in his right eye and moderate visual loss in his left eye. The ophthalmologist prescribed Travatan drops for both eyes, Alphagan drops for the right eyes and artificial tears to be applied as needed to both eyes. He opined that the plaintiff might need surgery in his right eye and recommended that the plaintiff return to see him in two weeks to under go a test to measure any damage to the optic nerve and nerve fibers.

On December 3, 2004, the plaintiff underwent the test to measure damage to the optic nerve which revealed an abnormal optic nerve in plaintiff's right eye and a borderline abnormal optic nerve in plaintiff's left eye. At that time, plaintiff's interocular pressure was seventeen in his left eye and eighteen in his right eye. The ophthalmologist recommended that the plaintiff continue on the prior prescription of both types of eye

drops, prescribed artificial tears be placed in plaintiff's eyes twice a day and submitted a request to the URC for plaintiff to return to see him for a follow-up visit in two weeks. On December 7, 2004, the URC rejected the request and recommended further follow-up with the onsite optometrist in one month. The URC directed the ophthalmologist to update the panel if there were any clinical changes to plaintiff's eyes.

On December 13, 2004, Dr. Castro entered an order for the medication prescribed by the ophthalmologist. The plaintiff saw Dr. Arnista again on January 26, 2005. The interocular pressure in his right eye was fifteen and the pressure in his left eye was fourteen. He recommended a follow-up appointment in one month.

III. Discussion

The defendant raises two grounds in support of his motion for summary judgment. He argues that (1) the plaintiff fails to state a claim under the Eighth Amendment for deliberate indifference to his medical needs and (2) he is entitled to qualified immunity.

    A.    Failure to State a Claim of Deliberate Indifference to Medical Needs

The defendant argues that the plaintiff has failed to state claim of deliberate indifference to the condition causing his vision loss. The plaintiff contends that there are disputed issues of fact regarding the adequacy and timeliness of the defendant's medical treatment of his vision loss.

11

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05.

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). A serious deprivation contemplates an urgent medical condition that may result in "'death, degeneration, or extreme pain.'" Hathaway, 37 F.3d at 66 (citation omitted). In addition, the existence of a serious medical condition is present "where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998)(internal quotation marks and citations omitted).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Id. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendant does not contest the fact that the plaintiff's glaucoma diagnosis was a serious medical condition. The defendant does contend, however, that he was not deliberately indifferent to that serious medical condition. Thus, the court addresses only the subjective prong of the Eighth Amendment standard. The plaintiff makes two separate claims of deliberate indifference to his serious medical needs. He contends that during the time period from March 2003 to April 2004, he complained to two nurses in G-Block about difficulties with his vision, these nurses made Dr. Arnista aware of his complaints and Dr. Arnista agreed to schedule appointments to examine him, but never kept those appointments. The plaintiff asserts that during the time period from time from April 2004 to December 2004, Dr.

13

Arnista failed to properly treat his glaucoma condition, failed to submit requests for further evaluation of the condition to the URC and failed to ensure that a prescription by an ophthalmologist had been filled in a timely manner.

    A.    <u>Time Period From March 2003 to April 2004</u>

The parties do not dispute that Dr. Arnista did not examine or treat the plaintiff until July 2004. The plaintiff contends, however, that he complained to two nurses in G-Block from March 2003 to April 2004 regarding his vision problems. The plaintiff's medical records contain no complaints about his eyesight or requests for medical treatment for vision problems until July 2004. Furthermore, the medical records show that the plaintiff was not housed in G-Block until September 4, 2003. (<u>See</u> Def.'s Mem. Support Mot. Summ. J., Ex. C at 309.) The plaintiff alleges that two nurses informed him that appointments had been scheduled on one occasion and that they had attempted to schedule appointments on other occasions. The plaintiff has not submitted the affidavits of the two nurses or any records or logs of appointments scheduled with Dr. Arnista during this time period.

Dr. Arnista avers that he does not recall being made aware of the plaintiff's complaints prior to July 2004 and that he never scheduled appointments to see inmates because it was the responsibility of the nurses to do so. The Office Assistant in

the Medical Department at Garner avers that nurses in the medical department scheduled appointments for optometry examinations by Dr. Arnista during the time period in question.

The only evidence in support of his claim that nurses made Dr. Arnista aware of his vision complaints from March 2003 to April 2004 and that Dr. Arnista scheduled appointments, but failed to keep those appointments is his own affidavit and the affidavit of another inmate, both of which contain hearsay statements. The plaintiff claims that between April and July 2003, he overheard the two nurses at the nurse's station in G-Block making telephone calls to Dr. Arnista regarding his vision complaints and that after making the calls the nurses informed him that Dr. Arnista had agreed to examine him on certain dates. The plaintiff also avers that after July 2003, on at least eight occasions, he overheard these same nurses and other nurses contact Dr. Arnista by phone and attempt to arrange appointments to see Dr. Arnista. Inmate Pickles' Affidavit includes a statement about a conversation he overheard between the plaintiff and a nurse in the medical unit of G-Block about an appointment with Dr. Arnista and another statement about conversations he had had with the plaintiff regarding information provided by nurses in the medical unit of G-Block regarding scheduled appointments with Dr. Arnista. All of these statements are hearsay and cannot create an issue of fact to defeat summary judgment. See Fed. R.

15

Civ. P. 56(e) (affidavits "shall set forth such facts as would be admissible in evidence"); Patterson v. County of Oneida, 375 F. 3d 206, 219 (2d Cir. 2004) ("Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.") (citation omitted). The court concludes that the plaintiff has failed to produce sufficient evidence to raise an issue of fact with respect to his claim that Dr. Arnista was aware of his complaints regarding his vision and was deliberately indifferent to those complaints by failing to schedule appointments or to keep scheduled appointments during the time period from March 2003 to April 2004.

B.  Time Period From April 2004 to December 2004

In response to a grievance filed by the plaintiff in June 2004, a nursing supervisor informed the plaintiff that he was on a list to see Dr. Arnista the next time he visited Garner. Dr. Arnista examined the plaintiff on July 16, 2004 and again on July 21, 2004. Based on his examinations of the plaintiff, Dr. Arnista diagnosed the plaintiff as suffering from open angle glaucoma in his right eye. He prescribed eye drops to reduce the interocular pressure and submitted a request dated July 21, 2004, to the URC to have the plaintiff examined by an ophthalmologist

16

who could perform baseline tests such as visual field testing and digital imaging of the optic nerve.  Those tests could not be performed at any of the correctional institutions.

The URC denied the request and recommended that Dr. Arnista continue to monitor and attempt to reduce the interocular pressure in plaintiff's eyes.  The medical records reveal that Dr. Arnista continued to monitor the plaintiff's condition and submitted a second request to the URC for a consultation with an ophthalmologist in early October 2004.  The URC granted this request and an ophthalmologist examined the plaintiff on November 9, 2004 and on December 3, 2004 and performed additional testing on the plaintiff's vision.  The ophthalmologist prescribed Travatan drops for both eyes, Alphagan drops for the right eyes and artificial tears to be applied as needed and submitted a request to the URC for a follow-up appointment.  On December 7, 2004, the URC denied the request and recommended that the on-site optometrist follow-up with the plaintiff and report any clinical changes and that medical staff monitor medication compliance. and any clinical changes be reported to it.  Dr. Arnista examined the plaintiff again in January 2005 and found that the interocular pressure in right eye had decreased to fifteen from eighteen and the pressure in the left eye had decreased from seventeen to fourteen.

There is no evidence that Dr. Arnista was deliberately

17

indifferent to plaintiff's glaucoma condition. After he diagnosed the plaintiff as suffering from glaucoma in his right eye, he prescribed medication for plaintiff's eye and submitted a request to the URC on July 21, 2004 and on October 6, 2004 for a consultation with an ophthalmologist who could perform additional field vision and optic nerve testing. On December 13, 2004, Dr. Castro entered the orders for the new eye drops and artificial tears prescribed by the ophthalmologist on November 9, 2004. Dr. Arnista does not process prescriptions of other medical providers and is not otherwise involved with the pharmacy that fills inmate prescriptions. The plaintiff has presented no evidence to suggest that Dr. Arnista delayed the start of the medication prescribed by the ophthalmologist. The court concludes that the plaintiff fails to meet his burden of presenting evidence demonstrating a genuine issue of material fact on his claim that Dr. Arnista was deliberately indifferent to his glaucoma condition from April 2004 to December 2004. The defendants' motion for summary judgment is granted.

IV. Conclusion

The plaintiff's Motion for Leave to Amend [**Doc. # 34**] is **DENIED** and the defendant's Motion for Summary Judgment [**Doc. #24**] is **GRANTED**. The Clerk is directed to enter judgment for the defendant and to close this case.

SO ORDERED this __29th____ day of October, 2007, at Bridgeport, Connecticut.

_____          /s/
                              Warren W. Eginton
                              Senior United States District Judge